UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 25-cr-158 (RDM) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **DERRELL WILLIAMS II,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States of America, by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Suppress Tangible Evidence. For the reasons incorporated herein, the Court should deny the defendant's motion.

**PRELIMINARY STATEMENT**

This case is about the lawful search of abandoned property. The defendant argues in his motion that police unlawfully searched his backpack and arrested him, mainly focusing on a search incident to arrest theory. *See* Def.'s Mot. at 3 (ECF No. 22). The defendant's arguments, however, derive from an inaccurate assessment of the facts of this case. The defendant inaccurately states in his motion, "Williams threw his backpack into the backyard of a row home and hopped the fence, landing right next to it," Def's Mot. at 3, and "though he tossed the backpack, he arrived in precisely the same location." Def's Mot. at 6.

The evidence, however, shows that after throwing his backpack, but prior to surrendering himself to the police, the defendant abandoned his backpack by attempting to run through what appeared to be a gap between two houses to further evade the police. Only after discovering this gap resolved in a dead end, did the defendant turn back into the yard and surrender himself to the

police. As the defendant abandoned his backpack during his attempted evasion of police, he lost his Fourth Amendment interest in the contents of the backpack, and the police lawfully searched it, recovering an AR-style Aero-Precision M4E1 multi-caliber pistol. The defendant's focus on whether this was a valid search incident to arrest is simply not relevant to a case about abandoned property.

Thus, the defendant's motion lacks merit and should be denied.

## FACTUAL BACKGROUND

At a hearing on the defendant's motion, the government anticipates establishing the following facts:

On May 18, 2025, members of the Metropolitan Police Department's (MPD) Third District were conducting a patrol within the Third District, wearing full MPD uniform in fully marked MPD cruisers. At approximately 2:30 AM, officers observed Defendant Derrell Williams with another individual passing back and forth a hand-rolled cigarette on the sidewalk near 1338 U Street Northwest, Washington, District of Columbia 20009. Officers observed the defendant raise the hand-rolled cigarette to his lips, inhale, and exhale a cloud of white smoke. Officers recognized this to be consistent with public consumption of marijuana and exited their cruiser to make contact with the defendant and the other individual. Upon exiting the vehicle, Officer Andrew Wolf ("Officer Wolf"), along with Officer Jose Moreno ("Officer Moreno"), immediately smelled a strong odor of burnt marijuana. The officers also observed the defendant holding a black backpack across his chest. The defendant was wearing a black hoodie with a red shirt appearing from under it, light blue jeans, and dark sneakers. This area is known to be a high-crime area, where crimes with firearms and gunshots are routinely reported.

Upon the defendant noticing the officers' presence, the defendant immediately turned in

the opposite direction and ran down the sidewalk. Officer Wolf verbally ordered the defendant to stop. The defendant continued to run and then turned into an alley to the south of the 1300 block of U Street NW. Officers Wolf and Moreno, along with Officer Jack Riegal ("Officer Riegal") and Officer Mohammad Al Khatib ("Officer Al Khatib") engaged in a foot pursuit of the defendant. Officers Wolf and Moreno observed the defendant throw his backpack over the chain link fence of a private residence and then climb over that fence into the backyard. Officer Moreno can be heard on his own body worn camera (BWC) observing, "He threw the bag, he's hopping the fence!" Gov't Ex. 1 (Officer Moreno BWC (02:29:44 – 02:29:46)). Officers then observed the defendant run into an alcove between the exterior wall of the residence and the neighboring house. *See* Figure 1, *infra.* Officer Wolf can be heard on his BWC stating, "He's boxed in." Gov't Ex. 2 (Officer Wolf BWC (02:29:52)).

[Continued to next page]



***Figure 1: Still shot of Officer Wolf's BWC, Gov't Ex. 2, at 2:29:53 depicting defendant (circled in yellow) in the alcove between the two houses. The discarded backpack is circled in red.***

With nowhere to run, the defendant finally submitted to the authority of the police by walking several steps toward the officers, who were still outside the fence, with his hands raised and laying down several feet to the side of the discarded backpack. *See* Figure 2, *infra*.

[continued to next page]

4



*Figure 2: Still shot of Officer Wolf's BWC, Gov't Ex. 2, at 02:30:26 depicting defendant (circled in yellow) laying down several feet from the discarded backpack (circled in red) The dark alcove area can be seen at the top of the figure.*

Officer Wolf then climbed the fence into the backyard, detained the defendant, and conducted a precautionary pat-down of the defendant's person for officer safety. After ensuring the defendant was safely detained, Officer Wolf began to search for the backpack and other possible contraband that the defendant may have tossed during his flight into the alcove of the residence. After a roughly 50 second search of the alcove area, Officer Wolf, with the assistance of new officers on scene, discovered the discarded backpack toward the fence area in an overgrown patch of greenery. *See* Figure 3, *infra*.



*Figure 3: Still shot image from Officer Waldarreio Bowser's BWC, Gov't Ex. 3, depicting where the police discovered the discarded backpack (circled in red).*

Officer Wolf opened the discarded backpack and discovered an AR-style Aero-Precision M4E1 multi-caliber pistol bearing serial number M4-0104470, loaded with 13 rounds of 5.56 rounds in the magazine and one additional round in the chamber. *See* Figure 4, *infra*. Upon discovery of the firearm, officers placed the defendant under arrest.

[continued to next page]



*Figure 4: Still shot image from Officer Wolf's BWC of the recovered firearm (serial #* **M4-0104470)** *in the black backpack.*

## LEGAL STANDARD

A party moving to suppress evidence must show that the evidence was seized due to a violation of their constitutional rights. *Wong-Sun v. United States*, 371 U.S. 471 (1963). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. Therefore, "all seizures, even ones involving 'only a brief detention short of traditional arrest,' be founded upon reasonable, objective justification." *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). However, "not all interactions between police

officers and citizens amount to a 'seizure' for Fourth Amendment purposes." *Id.*

In asserting a Fourth Amendment violation, a defendant must establish that they had a legitimate expectation of privacy in the place searched or a proprietary interest in the property seized. *United States v. Salvucci*, 448 U.S. 83, 93 (1980). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983), *cert. denied*, 464 U.S. 859, (1983)). Thus, "a warrantless search or seizure of property that has been abandoned does not violate the Fourth Amendment." *Thomas*, 864 F.2d at 845. The test to determine whether one has voluntarily abandoned property "is an objective one," focusing on the intent of the person who is alleged to have abandoned the object. *Id.* at 846 (internal citations and quotation marks omitted). This "intent may be inferred from words spoken, acts done, and other objective facts." *Id.* at 846 (internal citations and quotation marks omitted).

A defendant may only suppress abandoned property under the exclusionary rule when he abandons it as a result of an illegal search or seizure. *See United States v. Griffith*, 867 F.3d 1265, 1279 (D.C. Cir. 2017). Property that is abandoned by a person who is fleeing the police, prior to the person's seizure, is not "the fruit of a seizure" and should not be suppressed. *California v. Hodari D.*, 499 U.S. 621, 629 (1991). Police pursuit alone "does not of itself render an abandonment involuntary." *United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1981) (en banc). Only when "a person submits to the officer's show of authority" prior to the purported abandonment does *Hodari D.* become "inapplicable." *Griffith*, 867 F.3d 1265, 1280 (D.C. Cir. 2017) (citing *United States v. Wood*, 981 F.2d 536, 539-41 (D.C. Cir. 1992)).

**ARGUMENT**

**I.        The police lawfully searched the abandoned backpack.**

        **a.**  *The defendant abandoned the backpack.*

Here, the defendant voluntarily abandoned his backpack containing the firearm when he threw it over the fence and attempted to further elude the police. The defendant, therefore, forfeited any expectation of privacy in the backpack that he might have had, providing the police the lawful authority to search it. *Thomas*, 864 F.2d at 845.

The defendant's actions objectively demonstrated an intent to abandon the backpack. *See* Thomas, 864 F.2d at 846 (defendant's acts of fleeing from police with a bag into an apartment building and leaving the bag on the floor of the hallway and walking away constituted abandonment); *see also United States v. Wider*, 951 F.2d 1283, 1285-86 (D.C. Cir. 1991) (defendant's acts of placing bag on the steps in a public courtyard and walking away constituted abandonment). Like in *Thomas* and *Wider*, the defendant's actions of throwing the backpack and running away from it demonstrate clear, objective intent of abandonment. *See Thomas*, 864 F.2d at 846. Here, the defendant immediately ran upon seeing the police approach him, tossed his backpack containing the firearm over a fence, and then continued to run away before submitting to the officers' show of authority. *See* Figure 1, *infra*. In fact, the defendant's actions in this case provide a clearer showing of abandonment than those of the watershed case *Hodari D.,* as the defendant, here, was seized approximately six seconds after running away from the thrown backpack, as opposed to "a moment later." *See Hodari D.*, 491 U.S. at 623 (defendant threw contraband a moment before being tackled by police); Gov't Ex. 2 (Officer Wolf BWC (02:29:44 – 02:29:53); Figure 1*, infra*.

The defendant inaccurately writes in his motion, "Williams threw his backpack into the

9

backyard of a row home and hopped the fence, landing right next to it," Def's Mot. at 3, and "though he tossed the backpack, he arrived in precisely the same location." Def's Mot. at 6. These assertions derive from a fundamental misunderstanding of the facts of this case. Both Officer Wolf and Officer Moreno saw the defendant throw the backpack at approximately 02:29:44, as memorialized by Officer Moreno exclamation, "He threw the bag, he's hopping the fence!" *See* Gov't Ex. 1 (Officer Moreno BWC (02:29:44 – 02:29:46)). Both officers then saw the defendant run through the backyard of the residence and into an area in between the private residence and the neighboring house. *See* Gov't Ex. 2 (Officer Wolf BWC (02:29:46 – 02:29:52)); Figure 1, *infra*. Unfortunately for the defendant, this area resolved in a dead-end alcove, and not a pathway to escape the police. *See* Figure 1, *infra.* Only then, did the defendant surrender to the police and lay down several feet away from the backpack – not "precisely the same location." Def's Mot. at 6; *see* Figures 2 & 3, *infra*.

    b. *The defendant was seized after he abandoned the backpack.*

Central to the Court's determination in resolving this motion is the finding of when the defendant was seized, as property abandoned prior to a seizure is not "the fruit of a seizure." *See Hodari D.*, 499 U.S. at 629; *see also Griffith*, 867 F.3d at 1280. A person is seized under a "show of authority" only when he demonstrates "actual submission" to that authority. *See Brendlin v. California*, 551 U.S. 249, 254-55 (2007); *see also Hodari D.*, 499 U.S. at 626 (The Fourth Amendment "does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure.").

Here, the defendant did not submit to the show of authority until at least six seconds after he discarded and ran away from the backpack. *See United States v. Williams*, 20-cr-00280 (TSC), 2021 U.S. Dist. LEXIS 1980462, at *7-8 (D.D.C. Sept. 30, 2021) (finding that the defendant was

10

not seized when he refused to submit to officer's orders to stop and continued to run). Officer Wolf's BWC captures the moment the police, wearing full MPD uniform and driving in a marked MPD cruiser, got out of the vehicle to stop the defendant for the public consumption of marijuana, which is a violation of D.C. Code § 48–911.01. *See* Gov't Ex. 2 (Officer Wolf BWC (2:29:17)). The defendant was walking on the sidewalk, and Officer Wolf, who was standing closest to the defendant, was still several feet away on the street. *See id.* A moment later, at 02:29:18, the defendant saw Officer Wolf and immediately took flight. *See id.* Officer Wolf then made verbal commands to stop. *See id.* The defendant ran down the street, into an alley, and then threw the backpack over and climbed the fence of a private residence at approximately 02:29:46. *See* Gov't Ex. 1. After running into the gap between the two houses and discovering that he had nowhere to run, the defendant finally began to submit to the police show of authority, at 02:29:53, when he raised his hands and showed his palms to police. *See* Gov't Ex. 2; Figure 1, *infra*.[1] The defendant, however, refused to comply with Officer Wolf's and Officer Moreno's repeated commands of "Do not move!" as he walked several steps toward the officers with his hands raised. *See* Gov't Ex. 2 (Officer Wolf BWC 02:29:53 – 02:29:56). The defendant came to a rest at 02:29:56 and complied with the officers' commands to lie down. *See id.* The defendant, thus, did not submit to the officers' show of authority until at least six seconds after abandoning the backpack. As the defendant was not seized when he abandoned the backpack, the backpack was not the "fruit of a seizure." *See Hodari D.*, 499 U.S. at 626.

    c. *The police acted lawfully when pursuing the defendant.*

A defendant may only suppress abandoned property under the exclusionary rule when he

---

[1] Notably, the police did not make physical contact with the defendant until after he submitted to the police show of authority. *See Torres v. Madrid*, 592 U.S. 306 (2021) (holding that an officer's physical contact with a person with the intent to stop him, even for an instant, constitutes a seizure).

abandons it as a result of an illegal search or seizure. *See Griffith*, 867 F.3d at 1279 (holding that property is not abandoned "when a person discards it due to the unlawful activities of police officers, as where the disposal was prompted by police efforts to make an illegal arrest or search."). In *Griffith*, the D.C. Circuit held that the warrant was so defective as to render the defendant's abandonment of a firearm a result of an illegal search. *See Griffith*, 867 F.3d at 1279. The instant case is readily distinguishable from *Griffith* because, as the defendant concedes in his motion, that police had reasonable suspicion to stop the defendant for public consumption of marijuana. *See* Def's Mot. at 4-5.

    The police acted lawfully when attempting to stop the defendant. At approximately 2:30 AM on a weekend in one of the busiest nightlife streets in Washington, D.C., multiple MPD officers saw the defendant passing back and forth and smoking a hand rolled cigarette that, according to their training and experience, was consistent with smoking marijuana. When officers got out of the car to investigate the violation, they immediately smelled the odor of marijuana. Although the government contends that the police had probable cause to arrest the defendant at this moment for public consumption of marijuana, that is immaterial because the defendant immediately fled from the police and abandoned his backpack. As the police had, at minimum, reasonable suspicion to stop the defendant, their actions were lawful. Thus, there are no grounds to suppress the firearm in the abandoned backpack. *See Griffith*, 867 F.3d at 1280.[2]

---

[2] Assuming *arguendo* the Court finds that the defendant's backpack was not lawfully searched subsequent to voluntary abandonment, the firearm should not be suppressed as the firearm would have inevitably been discovered when Officers processed the Defendant for transport and inventoried his backpack upon his processing at the station house.

The doctrine of inevitable discovery permits the introduction of improperly seized evidence "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix. v. Williams*, 467 U.S. 431, 444 (1984). MPD had probable cause to arrest the defendant for at least three offenses prior to his throwing the backpack – Public Consumption of Marijuana in violation of D.C. Code § 48–911.01; Unlawful Entry – Private Property, in violation of D.C. Code § 22-3302; and Resisting Arrest, in violation of D.C. Code § 22-405.01.  MPD policy requires officers

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress is meritless and should be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
U.S. ATTORNEY

By: /s/ David B. Liss
DAVID B. LISS
Special Assistant United States Attorney
D.C. Bar No. 90017629
601 D Street, N.W.
Washington, D.C. 20530
(202) 680-4025
David.liss2@usdoj.gov

---

to conduct a "thorough field search," including removing outer clothing and removing all contents of prisoners' clothing, to include "pockets, jackets, coats, shoes, socks, or other clothing articles." Govt. Ex. 4, GO 502.01 at 6-7. Officers are further required to "inspect all property removed from the prisoner," and
"handle it in accordance with GO-SPT-601.01." *Id.* at 7. In turn, GO 601.01 requires that Officers inventory *all property* and document it on the appropriate form. Govt. Ex. 5, GO 601.01 at 16. Another MPD policy, GO 702.02, contemplates the procedures for warrantless searches by MPD and speaks specifically on the issue of a search incident to arrest, setting forth that "[t]he areas included in this search are the person being arrested and the area in their immediate control." Govt. Ex. 6, GO 702.02 at 3-4. GO 702.02 also directs that Officers carefully inspect "*all areas* where contraband may be hidden," remove outer clothing, and remove all contents from the clothing. *Id.* (emphasis added). In addition, the Supreme Court has explicitly recognized that these kinds of inventory searches protect important law enforcement interests and are valid. *See Illinois v. Lafayette*, 462 U.S. 650, 645-46 (1983) (discussing the inventory exception and that "it is entirely proper for police to remove and list or inventory property found on the person or in possession of an arrested person who is to be jailed.").

13